AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Nov 03, 2020
s/ Daryl Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>JAMES PATRICK QUINN<br><br>Defendant(s) | Case No. 20 MJ 211 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 12, 2016__ in the county of __Waukesha__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2314 | Transportation of Stolen Goods in Interstate Commerce |
| 18 U.S.C. § 371 | Conspiracy to Commit Offense Against the United States |

This criminal complaint is based on these facts:
See affidavit attached.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI SA Eric P. Fraser
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: November 3, 2020

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

U.S. Magistrate Judge William E. Duffin
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
CRIMINAL COMPLAINT AND ARREST WARRANT

I, Eric P. Fraser, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE**

1.     I have been employed as a Special Agent with the Federal Bureau of Investigation since March 2008. I am currently assigned to the North Central High Intensity Drug Trafficking Area ("HIDTA") Office (since January 2020). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

2.     I have participated in numerous complex narcotics, money laundering, violent crime, armed bank robbery, and armed commercial robbery investigations that implicate the provisions of Title 18 and Title 21 of the United States Code. I have employed a wide variety of investigative techniques in these and other investigations, including, but not limited to, the use of informants, wiretaps, cooperating defendants, recorded communications, search warrants, surveillance, interrogations, public records, DNA collection, and traffic stops. I have also received formal training regarding the same.

3.     This affidavit is submitted in support of an application for a criminal complaint and arrest warrant as to JAMES PATRICK QUINN (DOB XX/XX/1965) for his involvement in the criminal activity described below. In summary, there is probable cause to believe that on or about July 12, 2016, in the State and Eastern District of Wisconsin and elsewhere, QUINN violated Title 18, United States Code, Section 2314 (Transportation of Stolen Goods in Interstate Commerce) and Title 18, United States Code, Section 371 (Conspiracy to Commit Offense Against the United States), in that QUINN and others participated in an organized burglary of Treiber & Straub

1

Jewelers in Brookfield, Wisconsin, and subsequently transported stolen property to the State of Ohio.

4.  This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other state and local law enforcement officers during the course of their official duties. This affidavit is also based upon police reports, electronic and physical surveillance, physical evidence, electronic evidence, and witness statements that I consider to be reliable as set forth herein. The facts below are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5.  Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for a complaint and arrest warrant.

**PROBABLE CAUSE**

6.  On the morning of July 12, 2016, the City of Brookfield Police Department responded to a burglary that had occurred overnight at Treiber & Straub Jewelers (14740 W. Capitol Drive, Brookfield, Waukesha County, Wisconsin). The burglars entered the jewelry store by cutting the phone and cable lines, removing light bulbs from exterior lights, spraying foam into external audio alarm systems, and prying the back door open. The burglars then disabled the interior alarm system and cut a hole into the vault using sledge hammers and power tools. They took over $7 million in jewelry, diamonds, watches, and other items.

7. Surveillance footage captured these events. On July 11, 2016, between approximately 7:36 p.m. and 7:52 p.m., an individual is seen on exterior video surveillance approaching and leaving the northwest corner of the business, which is near the area where the internet/cable lines were cut. This took the alarm/server offline. Between approximately 10:49 p.m. that evening and 4:35 a.m. on July 12, three individuals are seen on external and internal video surveillance breaking into the business and carrying out the burglary as described above. The video shows two of the three suspects using cellular phones at various times. The suspects are not seen on video surveillance after approximately 4:35 a.m. on July 12, 2016.

8. On July 12, 2016, while officers of the Brookfield Police Department (BPD) were processing the burglary scene, blood was located inside the store on the exterior of the employee-only women's restroom door and collected as evidence. Evidence was submitted to the State of Wisconsin Crime Lab. After laboratory analysis, the DNA was not identified in the Combined DNA Index System, but it was determined that the unknown sample is from a male individual.

9. Approximately one year prior to the burglary, on July 29, 2015, the City of Brookfield Police Department received a call from Treiber & Straub regarding an incident involving two individuals who were observed via video surveillance cameras carrying flashlights and peering into the business's windows at approximately 4:15 a.m. The surveillance camera captured a close-up picture of one of the two individuals as he peered into the business window using a flashlight. They were observed, via external video surveillance cameras, loitering in the back of the business until approximately 5:00 a.m. on July 29, 2015. Both men were white males who appeared to be in their 30s or 40s. Based upon the suspicious nature of this incident, law enforcement officials believe the two individuals observed on the video surveillance during the

3

early morning hours on July 29, 2015, were either casing the business or intended to burglarize the business.

10. On September 14, 2015, a citizen at a residence to the north of Treiber & Straub Jewelers observed two male individuals acting suspiciously in a wooded area that separated the citizen's property from Treiber & Straub's property. A citizen used a flashlight to locate the subjects at which time the subjects fled the area on foot. The citizen notified the City of Brookfield Police Department of the above information, however, officers were unable to locate anyone on foot in the area.

11. The following morning, on September 15, 2015, Treiber & Straub employees opened the store for business and found the store had no phone or internet connections. The phone/internet provider was contacted and a technician attempted to diagnose the problem at the store. The technician found the internet/phone lines had been cut under ground level in the northwest external corner of the business. That area of the business was found to be in close proximity to the area where the citizen witness observed the two suspicious male individuals.

12. On July 16, 2019, I traveled to the Youngstown, Ohio area with Brookfield (WI) Police Department Detective Michael Skemp. There, we met with local law enforcement officials regarding the Treiber & Straub incidents from both 2015 and 2016. The local investigators were from the FBI's Youngstown Resident Agency, Ohio Bureau of Criminal Identification and Investigation, Boardman Township (OH) Police Department, and Canfield (OH) Police Department. Still photographs from the above-mentioned video surveillance of two white males "casing" the store July 29, 2015, were shown to local investigators. Based on their review of these images, they identified one of the subjects as F.S. and the other subject as QUINN. F.S. and QUINN are known to law enforcement as professional burglars from the Youngstown, Ohio area.

4

They are known to travel throughout the United States committing jewelry store burglaries. Local investigators were also shown video surveillance from the July 11-12, 2016 Treiber & Straub burglary; they indicated that the modus operandi was similar to F.S.'s previous burglary jobs. F.S.'s criminal history shows approximately 25 arrests between 1982 and 2014. The arrests include multiple counts of theft, breaking and entering, safecracking, criminal trespass, burglary, receiving stolen property, bribery, and other offenses. QUINN's criminal history shows approximately 11 arrests between 1993 and 2016 and includes multiple counts of theft, breaking and entering, possession of burglary tools, criminal trespass, burglary, receiving stolen property, and other offenses.

13. On July 18, 2019, I sought federal search warrants for buccal swabs from F.S. and QUINN. The warrants were approved and signed by U.S. Magistrate Judge George J. Limbert of the U.S. District Court for the Northern District of Ohio. Case agents obtained buccal swabs from F.S. at his home address.

14. QUINN was on federal supervision at the time, and his probation officer informed me that QUINN's address was 4125 New Road, Youngstown, Ohio. After some initial difficulty locating QUINN, we found him outside of this address. As case agents approached, they verbally identified themselves to QUINN and attempted to inform him of the search warrant. QUINN was in possession of a white object, which he was holding in his hands/arms. QUINN did not comply, and attempted to flee the area on foot. After a brief foot pursuit, QUINN was detained in a wooded area. He was no longer in possession of the white object. A white plastic bag was eventually found partially buried under a log in the wooded area, close to where QUINN was now detained. QUINN denied any knowledge or ownership of the bag or its contents. The bag and its contents were

therefore recovered as abandoned property. After executing the oral swab search warrant, QUINN was released.

15. The buccal swabs obtained from QUINN and F.S. were submitted for analysis and comparison. To date, no match has been found to the male DNA profile extracted from the blood found on the women's bathroom door at Treiber & Straub after the burglary.

16. The white plastic bag and its contents were brought to the FBI's Youngstown office, where its contents were inventoried. It contained an LG cellular phone Model: LG-B470, IMEI: 356585091001172; one green in color Huntington Bank bag; one green in color Citizen's Bank bag; a t-shirt; and blue nitrile gloves. The Huntington Bank bag contained $8712.13 in U.S. currency and scraps of paper. The Citizen's Bank bag contained $236.20 in U.S. currency, and paperwork including a valid Ohio Driver's license in the name of James Patrick QUINN with QUINN's photo. The paperwork in the Citizen's Bank bag also included a card with the business name "Lexren, LLC" and bank account and routing information. Publicly available records from the Ohio Secretary of State list "James Quinn" as a Member of this Limited Liability Company. I transported all of the items except for QUINN's Ohio Driver's license to the FBI's Milwaukee field office.

17. Also found among the items in the white plastic bag containing Quinn's driver's license were 3 paper envelopes that had writing on them indicating carat weight, cut, clarity and GIA (Gemological Institute of America) report numbers 2171632285, 7143135182, and 2155405177:

6



18.     Based on my training, experience, and information gathered during the course of this investigation, these envelopes are consistent with packaging that is used by jewelers to ship and store loose diamonds. The Gemological Institute of America (GIA) performs diamond grading, and a unique grading report number is assigned to all diamonds the GIA grades. The GIA report number is assigned to a specific diamond at the time the GIA grades the stone and identifies the stone's specific attributes. The GIA report number follows that specific stone indefinitely.

19.     On July 19, 2019, case agents contacted C.W., an employee of Treiber & Straub Jewelers, by phone. Detective Skemp provided the above-listed GIA numbers to Wilson so that they could be checked against Treiber & Straub's records of items taken during the burglary. Wilson was able to confirm that diamonds identified with the above-listed GIA numbers were taken during the July 12, 2016 burglary.

20.     Case agents sought federal search warrants for QUINN's properties at 4125 New Road and 90 Kenmar Court, Youngstown, Mahoning County, Ohio; and QUINN's truck, a 2000 Blue Chevy S10 2-door truck, Ohio Registration Plate EZM4604, vehicle identification number 1GCCS19W6YK118249. The warrants were approved and signed by U.S. Magistrate Judge George J. Limbert of the U.S. District Court for the Northern District of Ohio. The warrants were executed on September 19, 2019.

7

21. During the search of 90 Kenmar Court, a residence then under construction, law enforcement seized $2,450 in cash, as well as two cellular phones: a Samsung Model SM-J120A UD (Serial Number: R58H42PLCDV) which was located on a bucket next to a refrigerator in the garage, and a Samsung Model SM-G360T (Serial Number: R58H137GT6D) which was located on QUINN's person.

22. During the search of the residence at 4125 New Road, officers found, among other things: jewelers' loupes (commonly used by jewelers as a magnification tool to inspect and view items like precious stones and other jewelry), a book titled "Diamonds," a book titled "Superthief," hand-held radios and chargers, a face mask, a ski mask with holes cut out, and a head lamp.

23. The evidence seized during the searches was transported to the FBI's Milwaukee Office. The two Samsung smartphones seized at 90 Kenmar Court were forensically extracted and examined by members of the FBI's Computer Analysis Response Team. The extractions were then made available for review.

24. The contents of the Samsung SM-J120A UD (Serial Number: R58H42PLCDV) included a file titled "Device Users" which showed only one user, identified in the file as "James Quinn." The phone also contained numerous photos of QUINN and personal correspondence in text message and call logs between QUINN and others. Therefore, while it appears that another individual had been staying in the garage at 90 Kenmar Court when this phone was found and seized, the phone's contents attribute the phone to QUINN.

25. Case agents located a file titled "Device Locations" in the same extraction. By way of background, when a cell phone's location setting/service is turned on, applications on the phone may use cellular data connections and locations for certain features and functions. For example, an application may log the GPS coordinates of a captured photograph. Applications may store such

8

information in the phone's internal memory. The "Device Locations" file on the Samsung SM-J120A UD included certain cellular tower location data (including dates and times) from April 2016 onward.

26. Case agents were then able to create a list of tower locations registered in the file. The data included, but was not limited to, location information corresponding to cellular tower connections during the timeframe surrounding the Treiber & Straub burglary.

27. More specifically, the phone contained evidence of connections at or near the following locations, between July 10 and July 12, 2016:

| Date | Time | Tower Location (Latitude, Longitude) |
| --- | --- | --- |
| July 10, 2016 | 10:03 a.m. | Youngstown, Ohio (41.06721, -80.70194) |
| July 10, 2016 | 6:51 p.m. 6:52 p.m. 6:53 p.m. | Kalamazoo, Michigan (42.25720, -85.54705) |
| July 11, 2016 | 6:35 p.m. | Pewaukee, Wisconsin (43.03906, -88.19218) |
| July 11, 2016 | 6:36 p.m. 6:37 p.m. | 19245 Janacek Court Brookfield, Wisconsin (43.03238, -88.15202) |
| July 11, 2016 | 8:33 p.m. | 19295 W. North Avenue Brookfield, Wisconsin (43.05938, -88.15175) |
| July 12, 2016 | 7:05 a.m. 7:06 a.m. | Libertyville, Illinois (42.32853, -87.91169) |
| July 12, 2016 | 6:05 p.m. | 3671 Connecticut Avenue Youngstown, Ohio (41.10721, -80.71606) |

28. According to Google Maps, the most direct route between Brookfield, Wisconsin, and Youngstown, Ohio, covers approximately 500 miles over roughly 8 hours of driving. This route would include travel on Interstate 94 in southeast Wisconsin and northern Illinois.

29. Case agents used Google Maps to plot GPS coordinates and measure distances with respect to the particular cell tower locations set forth in paragraph 28 above. Of note, the cell tower in Pewaukee, Wisconsin, is approximately 1600 feet from Interstate 94. The distance from the cell tower at Janacek Court in Brookfield, Wisconsin, to I-94 is approximately 850 feet. The cell tower in Libertyville, Illinois is approximately 800 feet away from I-94 as it passes through that area.

30. Investigators in Wisconsin and Ohio have not found any ties between QUINN and Wisconsin or any other personal or business dealings that would explain his cell phone's brief presence in the Brookfield area on July 11, 2016, in the hours before the Treiber & Straub burglary was carried out.

## CONCLUSION

31. Based on the facts contained in this affidavit, there is probable cause to believe that on or about July 12, 2016, JAMES PATRICK QUINN violated Title 18, United States Code, Section 2314 (Transportation of Stolen Goods in Interstate Commerce) and Title 18, United States Code, Section 371 (Conspiracy to Commit Offense Against the United States).